UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD RYAN OSWALD,<br><br>Plaintiff,<br><br>v.<br><br>MV TRANSPORTATION, INC., et al.,<br><br>Defendants. | Case No. 25-cv-03053-AMO<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 12 |

Defendants MV Transportation, Inc., and MV Public Transportation, Inc. (together, "MV" or "Defendants"), move for judgment on the pleadings in this Private Attorneys General Act ("PAGA") action involving claims of wage and hour violations under state law. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for November 6, 2025, was VACATED. *See* Civil L.R. 7-6, Fed. R. Civ. Pro. 78(b); *see also* Dkt. No. 25. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** MV's motion for the following reasons.

I.  BACKGROUND

Plaintiff Richard Ryan Oswald was employed by MV Transportation, Inc., as a bus driver from August 7, 2023, to November 26, 2024. Bossaller Decl. (Dkt. No. 1-2) ¶ 4. He served as a public transit bus driver transporting passengers for the Western Contra Costa Transit Authority's ("WestCAT") public bus system. Nelson Decl., Ex. A (Dkt. No. 1-1, "Compl.") ¶¶ 2-3, 5, 7-8; *see also* Bossaller Decl. ¶ 5; RJN, Ex. 1 (Dkt. No. 13-1), Article 6. Oswald worked under MV's collective bargaining agreement ("CBA") with Teamsters Local 315 ("Union") that went into effect July 1, 2023. Bossaller Decl. ¶¶ 3-5; *see also* RJN, Ex. 1, Article 30.

1    On February 19, 2025, Oswald filed his putative class action complaint in Contra Costa
2 Superior Court. *See* Compl. (Dkt. No. 1-1 at 6-57). On April 2, 2025, MV filed an answer in state
3 court. Nelson Decl. (Dkt. No. 1-1) ¶ 4, Ex. B. On April 3, 2025, MV removed the case under
4 federal question jurisdiction pursuant to Title 28 U.S.C. §§ 1441 and 1446 on the grounds that
5 Oswald's claims are preempted under the Labor Management Relations Act ("LMRA") due to
6 statutory CBA exemptions. *See* Notice of Removal (Dkt. No. 1) at 2-3; *see also* Nelson Decl., Ex.
7 B (Defendant's Answer at 36th to 41st Affirmative Defenses).

**II.     DISCUSSION**

MV moves for judgment on the pleadings or, in the alternative, to compel arbitration of claims subject to arbitration pursuant to the CBA.[1] MV argues in substance that Oswald's wage and hour claims are preempted by the existence of the CBA. The Court first considers whether the CBA and other materials submitted by MV are the proper subject of judicial notice before turning to the merits of the motion for judgment on the pleadings.

**A.     Request for Judicial Notice**

MV requests the Court take judicial notice of several materials, including the operative CBA. A district court may take judicial notice of facts that are "not subject to reasonable dispute" because they are (1) "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). "Accordingly, '[a] court may take judicial notice of matters of public record.' " *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). A court cannot, however, "take judicial notice of disputed facts contained in such public records." *Id.* Courts regularly find CBAs to be the proper subject of judicial notice when determining pleading challenges based on LMRA preemption. *See*

---

[1] Defendants filed a nearly identical motion in the related case, *Oswald v. MV Transportation, Inc. et al*, N.D. Cal. Case No. 3:25-cv-00696-AMO. Though the Court's reasoning is nearly identical with regard to both motions, the Court issues a separate order in that case this same day.

United States District Court
Northern District of California

*Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142-43 (N.D. Cal. 2019) (taking judicial notice of CBA for Rule 12(c) motion based on LMRA preemption).

Here, Defendants proffer the publicly-available CBA in effect during Plaintiff's employment, contending it is central to the dispute, and Oswald does not establish otherwise. *See* Bossaler Decl. (Dkt. No. 1-2) ¶¶ 3-4; *see also* RJN, Ex. 1, Article 1 (Dkt. No. 13-1 at 4) (identifying the Union as the "sole and exclusive bargaining agent representative" for MV's drivers). Accordingly, the Court GRANTS the request for judicial notice.

MV Transportation additionally requests that the Court take judicial notice of Oswald's commercial driver's license. A California driver's license is judicially noticeable and deemed to be a matter of "public record." *Zeto v. BMW of North America, LLC*, 2020 WL 6708061, at *2 (S.D. Cal. Nov. 16, 2020); *see also United States v. Cuesta*, 2007 WL 2729853, at *16 (E.D. Cal. Sept. 19, 2007), *aff'd*, 286 F. App'x 358 (9th Cir. 2008) (taking judicial notice of California driver's license as an official "public record"). The Court therefore GRANTS MV's request to take judicial notice of the commercial driver's license to the extent it is necessary to resolve the application of certain Labor Code exemptions below.

Even if the Court did not grant the request for judicial notice under Federal Rule of Evidence 201, the Court could properly consider these documents as incorporated by reference. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (finding it proper to consider on motion to dismiss documents beyond the complaint where "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."). This is true even if "the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). That is the case here. Though Oswald avoids identifying the CBA and attempts to sidestep its application, he does not challenge the authenticity of either the CBA or his commercial driver's license and both documents are relevant to determining whether Oswald's claims belong in federal court. Thus, the Court alternatively and additionally considers the CBA and Oswald's commercial driver's license incorporated by reference.

**B.     Motion for Judgment on the Pleadings**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *Id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the time of filing"); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should thus be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(c) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

A district court generally may not consider materials outside the pleadings in deciding a motion under Rule 12(c), and if such materials are presented and not excluded, the motion must be treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). A district court may, however, consider the following materials without converting a Rule 12(c) motion to a Rule 56 motion: "(1) exhibits to the nonmoving party's pleading, (2) documents that are referred

to in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially noticed." *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

"If the Court determines that judgment on the pleadings is warranted, it must then decide whether to grant leave to amend." *Jackson v. CEVA Logistics*, No. 19-cv-07657-LHK, 2020 WL 6743915, at *3 (N.D. Cal. Nov. 17, 2020) (citing *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012)). "Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency." *Harris*, 682 F.3d at 1135.

### 1. Preemption

MV Transportation argues that it is entitled to judgment on the pleadings because Plaintiff's PAGA claims are all preempted by Section 301 of the LMRA. Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). "Although § 301 contains no express preemption language, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts," including collective bargaining agreements. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019). While generally federal preemption "is a defense that does not authorize removal to federal court," Section 301 has "extraordinary preemptive power" such that "a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court." *Id.* at 1152. Once preempted, " 'any claim purportedly based on [a] . . . state law is considered, from its inception, a federal claim, and therefore arises under federal law.' " *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (alteration in original) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)). Section 301 preemption does not apply to bar claims of violations of non-negotiable rights conferred as a matter of state law and instead applies only to "state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016); *see also Curtis*, 913 F.3d at 1152.

To determine whether a claim is preempted under Section 301, courts in the Ninth Circuit apply the two-step *Burnside* test. *Curtis*, 913 F.3d at 1152; *see also Burnside*, 491 F.3d at 1059. "First a court must determine 'whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there.' " *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Burnside*, 491 F.3d at 1059). If the right underlying the state law claims exists independently of the CBA, courts move to the second step and ask "whether the right is nevertheless substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 1032 (internal quotation marks and citation omitted). If the right is substantially dependent on a CBA, then the claim cannot proceed under state law. *Id.*

Oswald argues that his claims cannot be preempted under the LMRA because he only alleges state law claims. Despite the lack of reference to the LMRA or the CBA in the Complaint, complete federal preemption under the LMRA is an exception to the "well-pleaded complaint" rule and converts an alleged state law claim into a federal claim where a CBA governs. *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000); *see also Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997-99 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted under § 301 despite no mention of a CBA in the complaint). Indeed, a plaintiff cannot plead around complete federal preemption because "preemption attaches to a CBA dispute dressed in state law garb." *Martinez v. Omni Hotels Management Corp.*, 514 F. Supp. 3d 1227, 1236 (S.D. Cal. Jan. 20, 2021). Oswald's omission of any reference to the CBA in the Complaint does not preclude Section 301's preemptive effect.

Oswald resists the CBA's potential preemptive effect on the basis that his claims all arise under state law rather than the CBA, and further, he advances that MV must establish the applicability of a statutory exemption. Even if MV bore the burden to establish that a statutory exemption applies, Oswald's arguments must fail because they ignore the text of the statutory exemptions. For example, California Labor Code provisions regarding overtime pay, "Sections 510 and 511[,] do not apply to an employee covered by a valid collective bargaining agreement." Cal. Lab. Code § 514. The meal period exemption similarly states that the meal period

6

requirements "do not apply to an employee . . . covered by a valid collective bargaining agreement" if the CBA meets the requisite criteria. Cal. Lab. Code § 512(e). The rest period violation statute "shall not apply to an employee who is exempt from meal or rest or recovery period requirements" pursuant to a Wage Order. Cal. Lab. Code § 226.7(e). Under the Wage Order, the rest period requirements "shall not apply to any public transit bus driver covered by a valid collective bargaining agreement[.]" RJN, Ex. 2 § 12(C) (Dkt. No. 13-2 at 11). Because the CBA applied to Oswald's employment and the statutory exemptions apply, the Court must proceed through the remainder of the preemption analysis for each of his claims.

### 2. Overtime

MV Transportation argues that the LMRA confers federal subject matter jurisdiction and preempts Oswald's overtime-related claims. The Ninth Circuit instructs that if the CBA in question meets the requirements of Labor Code section 514, the plaintiff's right to overtime exists solely as a result of the CBA and is thus preempted under Section 301. *Curtis*, 913 F.3d at 1154. Under California Labor Code section 514, California's overtime provisions "do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.

Here, Oswald's employment was governed by the CBA. *See* Bossaller Decl. ¶¶ 3-4 (Dkt. No. 1-2); *see also* RJN, Ex. 1, Article 1 (the Union is the "sole and exclusive bargaining agent representative" for MV's drivers). The CBA provides thorough terms regarding the payment of wages for covered employees, *see* RJN, Ex. 1, Articles 16, 18, 27, hours of work, *id.*, Article 16, and working conditions, *id.*, Articles 13, 15, 17, 19-23, 28. Moreover, the CBA provides for premium wages at time and one-half for overtime hours. *Id.*, Article 16. The CBA also provides for hourly rates of pay of more than 30 percent above the California minimum wage. The applicable state minimum wage rates for the period covered by the CBA are $15.50 for 2023, $16.00 for 2024, and $16.50 for 2025. *See* RJN, Ex. 3. The 130% of minimum wage rate

thresholds for those periods were accordingly $20.15 in 2023, $20.80 in 2024, and $21.45 in 2025. The CBA rates of pay range from $24.49 to $33.00 per hour and thus exceed the necessary thresholds. RJN, Ex. 1, Article 27. Relatedly, Oswald's hourly rate exceeded 130% of the minimum wage throughout his employment. *See* Bossaller Decl. ¶ 5. Though Oswald seeks to avoid application of the CBA, arguing that his overtime claim arises exclusively under state law, Opp. at 3-5, the CBA's terms make clear that the Section 514 exemption applies. Because it does, the "right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154. Therefore, Plaintiff's overtime claim is preempted.

### 3. Meal Period

Oswald alleges in his third cause of action a claim for meal period violations under Labor Code sections 226.7 and 512. Compl. ¶¶ 22-29, 46(b), 50(c), 91-100. However, the Labor Code contains an exemption to its meal period requirements for commercial drivers. *See* Cal. Lab. Code § 512(e)-(g). The meal period exemption applies to commercial drivers where:

> [A] valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

Cal. Lab. Code § 512(e)(2); *see also* Cal. Lab. Code § 226.7(e) (meal period premium statute does not apply to employees exempt from meal period requirement).

Here, the CBA confirms the exemption applies. It states that "[t]he Union and the Company intend for this section to comply with the 'optout' provisions of California Labor Code section 512(e) with respect to all commercial drivers as defined in California Labor Code sections 512(f)(2) and (g)(l) employed in the bargaining unit." RJN, Ex. 1, Article 28. Moreover, as discussed above, the CBA provides for (1) the wages, hours, and working conditions of the employees; (2) premium wages for overtime hours; and (3) hourly rates at least 30% above the minimum wage rate. Moreover, the CBA expressly provides for 30-minute meal periods. *See* RJN, Ex. 1, Article 28. All the conditions for the meal period exemption exist here such that the CBA preempts Oswald's meal period claim.

8

Alternatively, Oswald fits within the definition of "[a]n employee employed as a commercial driver" pursuant to Labor Code section 512(f)(2) and thus subject to the meal period exemption. A "commercial driver" is defined in the relevant statutes as "an employee who operates a vehicle described in Section 260 or 462 of, or subdivision (b) of Section 15210 of, the Vehicle Code." Cal. Lab. Code § 512(g)(1). The vehicles described in Vehicle Code section 260 include "commercial vehicles," which are defined as vehicles "used or maintained for the transportation of persons for hire, compensation, or profit." Cal. Veh. Code § 260(a). Vehicle Code section 15210 separately describes "commercial motor vehicles" as any vehicle or combination of vehicles that requires a class A or class B license, or a class C license with a passenger transportation endorsement. Cal. Veh. Code § 15210(b)(1).

Oswald was a "commercial driver" under these statutes because he was employed as a bus driver transporting passengers on public bus routes pursuant to third-party contracts. Compl. ¶¶ 2-3, 5, 7-8; *see also* Bossaller Decl. ¶ 5; RJN, Ex. 1, Article 6. Oswald also operated a "commercial motor vehicle" because he drove vehicles that required a class B commercial driver's license with a passenger transportation endorsement, and he maintained that license during his employment. Compl. ¶¶ 2-3, 5, 7-8; *see also* Bossaller Decl. ¶ 5; RJN, Ex. 1, Article 13; RJN, Ex. 4.

For all these reasons, including the application of the CBA and the statutory meal period exemptions for commercial drivers, Oswald's meal period claim fails as a matter of law.

### 4. Rest Period

Oswald alleges in his fourth cause of action a claim for rest period violations under Labor Code section 226.7. Compl. ¶¶ 30-33, 102-110. The right to rest breaks in California is provided for through the Wage Orders. *See* RJN, Ex. 2, § 12(A) ("Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period."); *see also* Cal. Code Regs., Tit. 8, § 11090(12)(A). Labor Code section 226.7 requires rest breaks in accordance with the applicable Wage Order but specifically states that it "shall not apply to an employee who is exempt from meal or rest or recovery period requirements pursuant to other state laws, including, but not limited to, a statute or regulation, standard, or order of the Industrial Welfare Commission." Cal. Lab. Code § 226.7.

9

MV contends that Oswald's state law rest break claim fails because the CBA exemption for rest breaks in Wage Order 9 applies to his employment. The rest period section of Wage Order 9 provides,

> This section shall not apply to any public transit bus driver covered by a valid collective bargaining agreement if the agreement expressly provides for rest periods for those employees, final and binding arbitration of disputes concerning application of its rest period provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the State minimum wage rate.

RJN, Ex. 2, § 12(C).

In this case, Oswald was a public transit bus driver transporting passengers for the WestCAT public bus system. Compl. ¶¶ 2-3, 5, 7-8. Further, the CBA expressly provides for 10-minute rest periods. RJN, Ex. 1, Article 28. As noted above, the CBA provides for premium wages for overtime hours and hourly rates more than 30% above the minimum wage rate. Thus, the requirements of Wage Order 9's public transit bus driver exemption for rest periods are satisfied. Oswald's rest period claim is consequently preempted by Section 301 because Labor Code section 226.7(e) excludes Oswald from the statutory rest period requirements.

### 5. Minimum Wage

Oswald alleges in his first cause of action that MV did not pay minimum wages "for all hours worked." Compl. ¶¶ 12-21, 46(a), 50(a), 52-75. This claim is largely duplicative and derivative of his second cause of action for unpaid overtime as well as his third cause of action for meal period violations. For example, in support of his minimum wage claim, Oswald alleges that "[e]mployees would work hours and not receive wages, including as alleged above in connection with off-the-clock work and rounding and time shaving, including all the time required to remain on duty and under Defendants' control during breaks and due to the work demands placed upon them by Defendants' management and customers." Compl. ¶ 52. The facts alleged in support of Oswald's overtime claim are nearly identical; he does not argue that MV's wage rates fell below the minimum wage, but rather his arguments stem from the same off-the-clock allegations and purported requirement to remain on duty during meal breaks. *See, e.g.*, Compl. ¶ 79 ("Defendants had a consistent policy of not paying Employees wages for all hours worked, including by

1  requiring off-the-clock work as addressed above, by unlawful deductions, by under-reporting

2  actual hours worked, and by requiring Employees to do so as well."); ¶ 81 ("Defendants have also

3  violated these provisions by requiring Plaintiff and other similarly situated Aggrieved Employees

4  to work through meal periods when they were required to be clocked out or to otherwise work off

5  the clock to complete their daily job duties.").

6        Because Oswald's overtime and meal break claims are preempted as discussed above, so too is his factually overlapping minimum wage claim. *See Chavez v. Smurfit Kappa N. Am. LLC*, 2018 WL 8642837, at *4 (C.D. Cal. Oct. 17, 2018) (holding minimum wage claim based on off-the-clock allegations that could only arise out of the same facts as plaintiff's preempted overtime claim was also preempted under Section 301); *see also Thieroff v. Marine Spill Response Corp.*, Case No. CV 21-6075-DMG, 2022 WL 2965393, at *4 (C.D. Cal. June 6, 2022) ("Moreover, to the extent this [minimum wage off-the-clock] claim is derivative of the overtime claim or is otherwise covered by the CBAs, it is preempted as discussed above").

### 6. Derivative Wage Claims

Oswald asserts several other claims that are entirely derivative of his preempted claims. The fifth cause of action advances a claim for wage statement violations under Labor Code section 226(a) and asserts that the purported overtime and meal and rest period violations discussed above caused inaccurate wage statements. Compl. ¶¶ 111-24. The sixth cause of action advances a claim for unlawful deductions pursuant to Labor Code section 221 based on a theory that time was deducted from employee time records for meal periods that did not occur. *Id.* ¶¶ 125-29. The seventh cause of action advances a claim for timely payment of wages during employment under Labor Code section 204 caused by the purported overtime and meal and rest period violations. *Id.* ¶¶ 130-135. The eighth cause of action advances a claim for failure to pay all wages due at the time of termination, i.e., waiting time penalties pursuant to Labor Code section 203, caused by the purported unpaid overtime and meal and rest period premiums. *Id.*, ¶¶ 136-148. The ninth cause of action advances a claim for failure to maintain accurate payroll records pursuant to Labor Code sections 1174 and 1174.5 based on a theory that off-the-clock overtime was worked and time was deducted from employee time records for meal periods that did not occur. *Id.* ¶¶ 149-55. These

alleged Labor Code violations are all derived from Plaintiff's preempted claims for overtime and meal and rest period violations, and they accordingly must fail for the same reasons those foundational claims fail as described above.

In sum, Oswald's derivative claims are also preempted under Section 301 of the LMRA. *See, e.g.*, *Giles v. Canus Corp.*, No. 22-CV-03097-MMC, 2022 WL 3370793, at *6-7 (N.D. Cal. Aug. 16, 2022) (finding derivative claims for wage statement violations, waiting time penalties, and UCL violation preempted where underlying minimum wage, overtime, and meal periods claims were preempted by Section 301); *Vasquez v. Packaging Corp. of Am.*, Case No. CV 19-1935 PSG (PLAx), 2019 WL 4543106, at *4 (C.D. Cal. June 7, 2019) (where overtime claim was preempted by Section 301, remaining claims for wage statement violations and waiting-time penalties were similarly preempted "to the extent they [were] derivative of [the] overtime claim").

### 7.  **Grievance Process**

Based on the analysis above, Oswald's several preempted claims only exist under the CBA.  Prior to bringing a suit on a preempted claim, however, "an employee seeking to vindicate personal rights under a [CBA] must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985-86 (9th Cir. 2007); *see also Jones v. Sysco Ventura Inc.*, Case No. 221CV04116SVWAGR, 2021 WL 6104193, at *10 (C.D. Cal. Sept. 1, 2021) ("When a plaintiff's claims are preempted by the LMRA, 'the terms of the CBA control,' including the CBA's dispute resolution provisions.") (citing *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001)).  The "failure to exhaust contractually mandated procedures precludes judicial relief for breach of the collective bargaining agreement." *Soremekun*, 509 F.3d at 986-87; *see also United Paperwork Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987) ("The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute.").  "[A] CBA bars a plaintiff's statutory claims if the agreement's waiver of her right to sue is 'clear and unmistakable.' " *Williams v. Securitas Sec. Servs. USA, Inc.*, No. 23-CV-01863-LB, 2023 WL 5310937, at *8 (N.D. Cal. Aug. 16, 2023)

(quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-80 (1998)). When a plaintiff fails to exhaust remedies under a governing CBA, the court must dismiss that plaintiff's Section 301 claim. *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1354 (9th Cir. 1985).

Here, Oswald alleges wage-related claims based on California statutes and regulations and arise from his employment relationship with MV, including claims for minimum wages, overtime compensation, meal and rest period violations, expense reimbursement, and other derivative claims based upon alleged violations of the California Labor Code and the California Business and Professions Code. *See* Compl., ¶¶ 12-42, 52-163. All the claims raised in Oswald's first through ninth and eleventh causes of action are preempted by the LMRA, and those purported rights only exist under the CBA. The CBA sets forth a process to present and resolve grievances involving any "controversy, dispute or disagreement concerning the application, interpretation or enforcement" of the CBA, up to and including binding arbitration. *See* RJN, Ex. 1, Article 12. The CBA further provides for final and binding arbitration of disputes concerning the meal period provisions. *Id.*, Ex. 1, Articles 12, 28. The CBA also provides for final and binding arbitration of disputes concerning the rest period provisions. *Id.*, Ex. 1, Article 28. Given these CBA provisions, Oswald was required to pursue the relief sought for his claims through the CBA grievance and arbitration procedure.

Oswald resists the application of the CBA's grievance process on the basis that the procedure is unenforceable. Opp. at 1. Oswald is incorrect. It is well-settled that an employer and union can waive employee rights to a judicial forum and compel the use of arbitration for adjudication of statutory claims. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 256-58 (2009) ("[A] union may agree to the inclusion of an arbitration provision in a collective bargaining agreement in return for other concessions from the employer. Courts generally may not interfere in this bargained-for exchange."). An arbitration provision subjecting certain statutory claims to arbitration "must be honored" unless the statute reveals an intent to take those claims out of the realm of claims that may be subject to mandatory arbitration. *Id.* at 257-58. Indeed, courts have interpreted the LMRA to require "the specific performance of promises to arbitrate grievances in collective bargaining agreements." *Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007,

1017 (C.D. Cal. 2022) (quoting *Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 842 (9th Cir. 2022)).  Oswald was thus required to bring his claims arising under the CBA in the agreed forum and agreed format – through written grievance, submission to the Board of Adjustment, and/or through arbitration.  Oswald does not allege that he complied with the CBA's grievance process, and he thus fails to demonstrate administrative exhaustion and this Court cannot entertain Oswald's claims.  On this basis, his claims fail as a matter of law and MV is entitled to judgment.

### III. CONCLUSION

For the foregoing reasons, including that the CBA applies and the LMRA preempts Oswald's PAGA claims, the Court **GRANTS** Defendants' motion for judgment on the pleadings. On or before January 9, 2026, Defendants shall submit a proposed form of judgment both on the docket and in Word format to amopo@cand.uscourts.gov.

**IT IS SO ORDERED.**

Dated: January 5, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**